UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PEREGRINE FALCON LLC, Trustee of the Peregrine Falcon Leasing Trust, and FAST ENTERPRISES, LLC, a New York limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>PIAGGIO AMERICA, INC, a Delaware corporation,<br><br>Defendant.<br>vs.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania company,<br><br>Intervenor. | Case No. 1:15-cv-00568-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is Defendants' Motion to Dismiss (Dkt. 80). For the following reasons, the Court DENIES the motion.

## BACKGROUND

The Court has extensively detailed the background facts of this litigation in its prior Memorandum Decision and Order. Dkt. 80. The Court will assume the reader's familiarity with its prior decision.

# LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept legal conclusions that are couched as factual allegations as true; the trial court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

# ANALYSIS

1. **Idaho Contract Law Provides the Rule of Decision for Fast's Contract-Based Claims**

First the Court address which law governs Fast's contract-based claims. Fast and Peregrine (collectively, "Fast") argue that Idaho law governs. Dkt. 84 at 10-12. Conversely, Piaggio argues that Florida law governs. Dkt. 80 at 8-9. The Parties seemingly agree that a substantive conflict between Florida and Idaho contract law exists. Applying the proper choice of law analysis, the Court concludes that Idaho law provides the rule of decision for Fast's contract-based claims.

Before turning to that analysis however, the Court notes that previously it held that Fast not bound by the arbitration provision in Agreement No. 1. Dkt. 36 at 19. That same provision also contains the following language: "Any controversy or claim between the parties arising out of or relating to this Agreement, or the breach thereof, shall be governed by Florida law." Dkt. 7-1 at 4. In its reasoning regarding the applicability of the arbitration provision to Fast, the Court included the following analysis in a footnote: "the Court will rely on Idaho law and ignore the choice of law provisions in Agreement No. 1 because neither Fast nor Peregrine were signatories to that agreement." Dkt. 36 at 19 n.1. Thus, the Court has already suggested an outcome regarding this dispute.

A full analysis applying Idaho's choice-of-law case law confirms the Court's conclusion. Idaho law requires the Court, when determining which state has the "most significant relationship to the transaction and the parties" to consider five factors in determining what law to apply: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of

business of the parties. *Wayne Enters., LLC v. McGhee*, No. 1:15-cv-EJL-CWD, 2017 WL 1960662 (D. Idaho May 10, 2017), citing Rest. Second Conflict of Laws § 188.

Piaggio's analysis focuses solely on Agreement 1, which it argues was negotiated, drafted, executed, and largely performed in Florida. Because Piaggio improperly confines its analysis to Agreement 1 and not the combined contents of Agreement 1, Agreement 2, Amendment 1 and Amendment 2, its argument misses the mark. Piaggio and Fast do not detail exactly where the negotiation and execution of Amendment 1 and Amendment 2 took place, but based on the incorporation of countersigning language the Court infers, as it must at this stage, that the negotiation and execution by Piaggio's and Fast's representatives took place from their offices in Florida and Idaho respectively. Dkt. 7-2; Dkt. 7-3. Thus, the first, second, and fifth factors are neutral.

The Court agrees with Fast that the third and fourth factors are dispositive in favor of applying Idaho law. The plane at issue in this case was delivered to Fast in Idaho. Furthermore, Amendment 1 and Amendment 2 contemplate the provision of charter services for Fast in Idaho during the period that the plane was not available due to production delays. Dkt. 7-2; Dkt. 7-3. Finally, the plane was intended to be based out of Idaho and serviced by Fast's employees in Idaho. Accordingly, Idaho has the most significant relationship to the transaction, and its law must therefore govern the Court's decision.

**2. Fast Has Plausibly Alleged It Is in Privity of Contract with Piaggio Regarding Delivery of an Airplane Free from Defects**

Fundamentally, the Parties disagree over just what agreement, if any, existed between Fast and Piaggio. According to Piaggio, Fast's claim of privity rests solely upon Agreement 1 – the contract signed solely by Piaggio and CBA. Dkt. 80 at 11-12. On the other hand, Fast argues that Amendment 1 and Amendment 2 create a contractual relationship between Fast and Piaggio. Dkt. 84 at 9-10, 12. The Court finds at this stage that Fast has adequately alleged that contractual privity exists between Fast and Piaggio.

A. *Background*

The Court will briefly review the series of events involved in the formation of the agreement between the Parties of this case. Agreement 1 was executed solely by Piaggio and CBA. Dkt. 7-1. On the same day, Agreement 2 was executed solely by CBA and Fast. Dkt. 32-1. After Agreement 1 and Agreement 2 were executed however, two Amendments were executed by Piaggio, CBA, and Fast.

Amendment 1 expressly acknowledged that Piaggio, CBA, and Fast had entered into "a back to back transaction." Dkt 7-2 at 2. Additionally, Amendment 1, which predominantly pertained to price reductions because of Piaggio's failure to timely deliver the aircraft to CBA—and by extension to Fast—contained the following language, "Except as explicitly set forth in this Amendment, each of Agreement #1 and Agreement #2 shall remain in full force and effect and unamended by this Amendment." Dkt. 7-2 at ¶ 3.

Amendment 2, which primarily related to Piaggio's inability to install the required WIFI system in a timely fashion, contains the following language:

> [A]s soon as possible in December of 2013, PIAGGIO shall deliver the Aircraft to CHARLIE BRAVO in the *condition required* by Agreement #1 … together with a FAA Bill of Sale and Warranty Bill of Sale, so that CHARLIE BRAVO can immediately deliver the Aircraft to FAST ENTERPRISES in the *condition required* by Agreement #2.

Dkt. 7-3 at ¶ 1 (emphasis added). According to Fast, the "condition required" by Agreement 1 and Agreement 2 was an aircraft "free from all defects in material and workmanship and from defects inherent in its design relative to the known state of the art at the time of such design." Dkt. 84-1 at 13[1].

### B. *Analysis*

As described above, the Court is confronted by a four-part agreement between the Parties, the exact meaning of which is unclear. Looking at the Parties' arguments, the Court acknowledges that Piaggio's interpretation of the four-part agreement is more plausible. Fast's interpretation requires the Court to read into Amendment 1 and Amendment 2 an entirely new agreement regarding the delivery of a defect free aircraft between Fast and Piaggio. Furthermore, Fast's position also requires the Court to assume that this unstated agreement did not include any waivers akin to those in Agreement 1 and Agreement 2.

---

[1] Both Parties rely extensively on the Aircraft Manufacturer's Limited Warranty throughout their briefing. Dkt. 84-1 at 13. Docket entry 84-1 is attached to a Declaration by Fast's counsel, Erik Stidham, in support of Fast's response to Piaggio's motion to dismiss. Piaggio's counsel, William Barr, attaches a functionally identical document to his declaration in support of Piaggio's motion to dismiss. Dkt. 80-4. As described by the Parties, this document is the "Appendix B" incorporated by reference in Agreement 1 and Agreement 2. Accordingly, the Court finds that these documents are incorporated by reference into Fast's Second Amended Complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (outlining the extent to which a district court may appropriately consider documents incorporated by reference into the complaint).

Both assumptions are contradicted by the carefully constructed back-to-back transactions set forth in Agreement 1 and Agreement 2 and the claim waivers in the same. Furthermore, Amendment 1's language that "[e]xcept as explicitly set forth in this Amendment, each of Agreement #1 and Agreement #2 shall remain in full force and effect and unamended by this Amendment" (Dkt. 7-2 at ¶ 3) also suggests that at least Amendment 1 should not be read to functionally eliminate the back-to-back structure of the transaction. But, ultimately the Court concludes that it cannot, at the motion to dismiss phase, find that Fast's interpretation of the agreement between it and Piaggio is implausible.

3. **Fast Has Plausibly Alleged that It Is Not Bound by the Contract, Warranty, and Tort-Based Claim Waivers in Agreement 1 and Agreement 2**

The Court's analysis with respect to the privity between Fast and Piaggio foreshadows its conclusions with respect to the contract, warranty, and tort-based claim waivers in Agreement 1 and Agreement 2. Both Agreements contain nearly identical language, with the sole difference being the names of the Parties:

> THE WARRANTIES SET FORTH IN APPENDIX B OF THE SPECIFICATION ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES (EXCEPT FOR THE WARRANTY OF TITLE) AND REPRESENTATIONS, IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS (INCLUDING FITNESS FOR A PARTICULAR PURPOSE) RELATED TO THE AIRCRAFT OR ANY MODIFICATIONS, REPAIRS, REPLACEMENT PARTS, OR SERVICE CHANGE KITS WHICH MAY BE FURNISHED BY PIAGGIO TO BUYER FOR USE ON THE AIRCRAFT. Except for the obligations expressly undertaken by PIAGGIO in this Agreement and the warranties set forth in Appendix B of the Specification and the Bill of Sale with respect to the Aircraft in the form attached as Appendix C, BUYER hereby waives and releases for itself and its insurers (through subrogation or otherwise) all rights, claims, and remedies with respect to any and all warranties, express, implied, or statutory (including,

without limitation, any implied warranties of merchantability and fitness, including fitness for a particular purpose), duties, obligation, and liabilities of tort or contract arising by law or otherwise, including … strict liability or product liability [and/or] any obligations of PIAGGIO with respect to incidental or consequential damages, damages for loss of use, or damage relating to the market value of the Aircraft. BUYER acknowledges and agrees to the terms, conditions, and exclusions (including without limitation, destruction of the Aircraft beyond economical repair) of the Warranty set forth in Appendix B of the Specification. This disclaimer shall not be interpreted to expand BUYER's remedies beyond those set forth in Section 6.C of the attached Terms and Conditions or to affect in any way PIAGGIO's obligations, if any, for third party claims for property damage, personal injury, or wrongful death.

Dkt 7-2.

Like the Court's conclusion regarding the existence of privity between Piaggio and Fast, the above text, even in light of Amendment 1 and Amendment 2, certainly lends itself to the conclusion that Fast waived its contract, warranty, and tort-based claims. But again, Amendment 1 and Amendment 2 muddy the waters. Because neither of those provisions contain waivers similar to the one at issue here, the Court finds that it is at least plausible that Fast did not waive its right to pursue contract, tort, and warranty claims. Accordingly, dismissal at this stage is inappropriate.

4. **Dismissal of Fast's Claims Pursuant to the Doctrine of Subrogation Is Not Appropriate Because Fast's Sought-After Damages Are Not Limited to Damages Recouped from Its Insurer, National Union**

Piaggio's subrogation argument is also unavailing. "Subrogation is an equitable doctrine that permits an insurance company to assert the rights and remedies of an insured against a third party tortfeasor." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1117 (9th Cir. 2010). "The purpose of legal subrogation is to work out an equitable adjustment between parties by assuring that the discharge of an obligation be

paid by the person who in equity and good conscience ought to pay it." *Presnell v. Kelly*, 113 Idaho 1, 3 (1987). "An additional purpose of subrogation for third party liability is to prevent the injured claimant from obtaining a double recovery for an injury." *Id.*

Here, Fast apparently does not contest that its insurer, National Union, paid to have the plane repaired. Dkt. 84 at 14. But Fast rightly argues that "Plaintiffs' claims are not subrogated because they seek damages beyond the reimbursement of repair costs paid by the insurer." Dkt. 84 at 14. After reviewing Fast's Second Amended Complaint, the Court concludes that Fast is correct. It may pursue its claims and seek damages that were not covered by National Union. In so doing, Fast simply seeks to vindicate its "legal right to be made whole." *Chandler*, 598 F.3d at 1119. Should this matter proceed to trial, the Court will be careful to avoid permitting the jury to award Fast a windfall in the form of a double recovery.

### 5. Fast Has Adequately Alleged Its Revocation and Rejection Claims

Idaho law allows a contracting party, upon receipt of non-conforming goods, to reject those goods (I.C. § 28-2-601) or, if it has accepted them, to revoke its acceptance (I.C. § 28-2-608). Where a buyer rejects the goods prior to acceptance and "the seller gives no instructions within a reasonable time after notification of rejection the buyer may … resell them for the seller's account with reimbursement as provided in the preceding section. Such action is not acceptance or conversion." I.C. § 28-2-604. A buyer who revokes its acceptance has the same right to resell the non-conforming goods. I.C. § 28-2-608(3).

To begin with, the Court notes that Fast appears to plead its rejection and revocation claims in the alternative. This pleading is consistent with Federal Rule of Civil Procedure 8(d)(2). The only argument that the Court will consider at this time with respect to Fast's rejection and revocation claims is Piaggio's argument that Fast was not in privity with Piaggio and therefore is barred from bringing either claim.[2] This argument is inconsistent with the Court's conclusion, described above, that Fast has adequately alleged that it is in privity of contract with Piaggio.[3]

### 6. Fast Has Adequately Alleged Its Negligence, Product Liability, and Strict Liability Claims

Fast's negligence, product liability, and strict liability claims are also adequately pleaded. The Court begins with Piaggio's argument that Piaggio Aero Industries S.p.A., and not Piaggio, manufactured the plane and is therefore the appropriate defendant. Here, the Court is constrained to the four corners of the Complaint and will not accept Piaggio's invitation to include facts in its analysis that appear outside of that pleading. Piaggio may be right in its claim that, "[it] is akin to an automobile dealer [and] has no role in the design or manufacture" of the plane, but that is a determination that can only be made on summary judgment or at trial. Dkt. 80 at 18-19.

---

[2] Piaggio also argues that Fast's rejection and revocation claims are barred because "Plaintiffs fail to acknowledge the fact that they sold the Aircraft prior to filing their Second Amended Complaint." Dkt. 80 at 17. This fact is outside of the four corners of the Second Amended Complaint, and the Court will not convert this motion to a Rule 12(c) or Rule 56 motion.

[3] Piaggio's argument that there is "no … buyer-seller relationship" between Fast and Piaggio according to the definitions of those terms under the UCC is a variant of Piaggio's unavailing privity argument.

Next, the Court considers Piaggio's argument that Fast's product liability claim fails because Piaggio is merely a "product seller." This is a variant of Piaggio's argument that Piaggio Aero Industries S.p.A. is the appropriate party for Fast's negligence claim. Denial is therefore appropriate for the reasons just described. The Court will also note that denial would be appropriate on the merits as well. According to Piaggio, because it is a "product seller," it cannot be liable under Fast's product liability theory. *Id.* But, as Fast points out, § 6-1407's bar on liability is excepted where "[t]he product seller is a wholly-owned subsidiary of the manufacturer, or the manufacturer is a wholly-owned subsidiary of the product seller." I.C. § 6-1407(d). Piaggio, in its corporate disclosure, stated, "Piaggio is a wholly owned subsidiary of Piaggio Aero Industries Spa, an Italian corporation." Dkt. 2 at 2. Thus, section 6-1407 does not bar Fast's product liability claim.

Finally, the Court will address Piaggio's argument that the economic loss doctrine bars Fast's negligence, strict liability, and products liability claims. Dkt. 80 at 20-22. In Idaho, "there is no duty to prevent economic loss to another" in the context of a tort action; thus, recovery of purely economic losses on a negligence claim is prohibited absent an applicable exception. *Blahd v. Richard B. Smith, Inc.*, 108 P.3d 996, 1000 (Idaho 2005) (citation omitted). There are limited exceptions to the economic loss rule, including where there is a special relationship between the parties such that the duty to prevent economic loss arises out of equity. *Blahd*, 108 P.3d at 1000 (citing *Duffin v. Idaho Crop Imp. Ass'n*, 895 P.2d 1195, 1201 (Idaho 1995)). The Idaho Supreme Court has applied the special relationship exception in only two situations: where the defendant

is a professional or quasi-professional performing personal services, *Blahd*, 108 P.3d at 1000 (citing *McAlvain v. General Insur. Co. of America*, 554 P.2d 955, 958 (Idaho 1976)), and where defendant is an entity holding itself out as having expertise in a specialized function, *Blahd*, 108 P.3d at 1000 (citing *Duffin*, 895 P.2d at 1201). In both cases, the parties' relationship is such that plaintiff is induced to rely on defendant's performance. *Id.* Critically, application of the doctrine presupposes and is predicated upon the privity between the parties. *L.J. Gibson, Beau Blixseth v. Credit Suisse AG*, No. 1:10-CV-00001-JLQ, 2016 WL 4033104, at *14 (D. Idaho July 27, 2016) (the economic loss rule does not apply "where the parties to the suit are not in privity to any contract").

Fast argues, and the Court agrees, that dismissal of Fast's tort-based claims pursuant to the economic loss doctrine is inappropriate at this stage of the proceedings. Piaggio has strenuously argued throughout its briefing that no privity exists between Piaggio and Fast. If that proves to be the case, then the economic loss doctrine has no bearing on Piaggio's tort-based claims. *See L.J. Gibson, Beau Blixseth*, 2016 WL 4033104 at *14. Furthermore, it may also be true that a special relationship existed between Fast and Piaggio that bars the application of the economic loss doctrine. *Duffin*, 895 P.2d at 1201 (reversing grant of summary judgment due to fact issues with respect to the special relationship between the Parties). Finally, Fast is also correct that it may, pursuant to Rule 8, bring its contract-based claims and tort-based claims in the alternative. As a result, merely pleading both contract and tort-based claims at this stage of the litigation does not require dismissal of all the claims.

### 7. Fast Has Adequately Alleged Its Unjust Enrichment Claim

Piaggio's argument regarding Fast's unjust enrichment claim is, in essence, a duplicate of its argument regarding Fast's tort-based claims. In short, Piaggio argues that because Agreement 2 was in place and the payment from Fast went to CBA[4], Fast cannot proceed under a theory of unjust enrichment. With respect to Piaggio's argument that Fast's agreement with CBA prevents Fast from maintaining an unjust enrichment claim against Piaggio, Idaho law expressly requires the contrary conclusion: where "[t]here is no contract demonstrated between all of the[] parties [nothing] … bar[s] … the theory of unjust enrichment." *Vanderford Co. v. Knudson*, 165 P.3d 261, 272 (2007). If, in fact, privity existed between the Parties as a result of the combined workings of Agreement 1, Agreement 2, Amendment 1, and Amendment 2, the dismissal of Fast's unjust enrichment claim is potentially appropriate. But, given Piaggio's own argument that no privity existed between it and Fast, dismissal at this phase is inappropriate, especially in light of the fact that Fast is allowed to plead its unjust enrichment claim in the alternative to its contract claims. *See Thomas v. Thomas*, 249 P.3d 837 (Idaho 2011).

### 8. CBA Is Not an Indispensable Party

Finally, the Court addresses Piaggio's argument that dismissal is required pursuant to Rule 12(b)(7) because CBA is an indispensable party. Previously, this Court held that Fast's claims against CBA under Agreement 2 were subject to arbitration. Dkt. 36 at 22-23. Ultimately, the Court concludes that this litigation can continue in CBA's absence.

---

[4] Piaggio's arguments regarding Fast's failure to plead the underlying elements of unjust enrichment, including that the conferral of a benefit that was inequitably obtained by Fast, are unavailing.

A Rule 19 motion poses "three successive inquiries." *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). First, the court must determine whether a nonparty should be joined under Rule 19(a). If an absentee is a necessary party under Rule 19(a), "the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id.* If joinder is not feasible, the court must determine whether the case can proceed without the absentee or whether the case should be dismissed because the absentee is an indispensable party. *Id.* An indispensable party is one who "not only [has] an interest in the controversy, but [has] an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id.* Naturally, if a party is not necessary under Rule 19(a), the Court need not consider whether they are indispensable under Rule 19(b). *Knox v. U.S. Dept. of Interior*, 759 F. Supp. 2d 1223, 1237 (D. Idaho 2010). Finally, in deciding a motion brought under Rule 12(b), the allegations contained in the Complaint are accepted as true, and all reasonable inferences arising therefrom are drawn in favor of the Plaintiff. *Paiute–Shoshone Indians of Bishop Community of Bishop Colony, Cal., v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011).[5]

---

[5] Fast asks the Court to consider a declaration from CBA's arbitration counsel, Steven Skarnulis, attesting to the fact that "CBA does not contend that its rights will be affected or prejudiced by the resolution of the claims brought against Piaggio in the Idaho Lawsuit … and does not believe its contractual rights or other legally protected interests can be affected or prejudiced by this lawsuit." Dkt. 84-2 at 2. Fast, like Piaggio, is thus guilty of asking the Court to consider facts outside of the four corners of the Second Amended Complaint. Similar to its treatment of Piaggio's arguments, the Court declines to do so.

Piaggio's indispensable party argument fails to clear the first hurdle of Rule 19. With respect to Rule 19(a)(1)(A), the Court can accord complete relief between Piaggio and Fast via these proceedings. Indeed, common sense suggests that CBA would prefer that Piaggio pay the lion share or all damages incurred by Fast, thus making it less likely that Fast will aggressively pursue its claims against CBA in the arbitration proceedings.

This same logic drives a similar result with respect to the inquiry under Rule 19(a)(1)(B). Piaggio's argument is predicated upon the contention that Fast is seeking rescission, thereby impacting CBA's obligations under both Agreements and the Amendments. *See* Dkt. 80 at 24 ("If the Agreements are *undone*, as Plaintiffs seek to do in several of their claims, then CBA's legally cognizable interests will be implicated and possible adversely affected."). But, Fast is not seeking rescission, making Piaggio's argument and the case law cited therein irrelevant. Because Piaggio fails to make the threshold showing that CBA is a required party, the Court will not consider the final two steps in the Rule 19 analysis.

## ORDER

**IT IS HEREBY ORDERED:**

1. Piaggio's Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 80) is **DENIED**.

2. The Parties are **ORDERED** to file a stipulated Case Management Order within fourteen (14) days of the issuance of this Memorandum Decision and Order. In the event the Parties cannot reach a stipulation, they are **ORDERED** to meet and confer by telephone with the Court's clerk on the call.



DATED: April 30, 2019

_____
B. Lynn Winmill
U.S. District Court Judge